IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1234

 Filed: 15 October 2019

Cumberland County, Nos. 07 CVD 7455, 09 CVD 3983

GUY UNGER, Plaintiff,

 v.

HEATHER UNGER, Defendant.

 Appeal by Plaintiff from an order entered 5 July 2018 by Judge Robert J.

Stiehl, III, in Cumberland County District Court. Heard in the Court of Appeals 8

May 2019.

 Renorda Pryor for Plaintiff-Appellant.

 No brief filed for Defendant-Appellee.

 DILLON, Judge.

 This matter is a domestic dispute concerning the child support obligations of

Guy Unger (“Father”) pursuant to orders entered in 2012. More recently, Father filed

a series of motions, including motions pursuant to Rule 60, seeking relief from the

2012 orders. By order entered 5 July 2018, the trial court denied Father’s motions.

Father appealed. For the following reasons, we affirm.

 I. Background
 UNGER V. UNGER

 Opinion of the Court

 In August 2007, Father filed a complaint for divorce from bed and board, child

custody, child support, equitable distribution, and Rule 65 injunctive relief against

Heather Unger (“Mother”).

 In August 2008, the trial court entered an order (the “2008 Order”) requiring

Father to pay child support in the amount of $2,142.00 per month. However, Father

fell behind on his child support obligations, and Mother moved the trial court to hold

Father in contempt. The trial court issued an order for Father to appear and show

cause why he should not be held in civil or criminal contempt.

 In September 2012, prior to the show cause hearing, the parties signed a

Memorandum of Judgment (the “2012 MOJ”). In the 2012 MOJ, Father agreed to be

held in contempt, and Mother agreed that Father’s child support obligation would be

reduced to $700.00 per month going forward and that Father could catch up on the

arrearages he had accumulated up to that point at a rate of $100.00 per month.

 A month later, on 25 October 2012, the trial court entered a written order (the

“2012 Order”) formalizing the 2012 MOJ. There is evidence, though, that Father

immediately fell behind on his modified child support obligations. As a result, on 7

November 2012, the trial court entered an order for Father’s arrest (the “2012 Arrest

Order”). This 2012 Arrest Order is problematic, as explained below, but Father is not

making any argument concerning this Order in the present appeal, and it is unclear

from the record the status of the 2012 Arrest Order.

 -2-
 UNGER V. UNGER

 Opinion of the Court

 Father did not immediately appeal any of the 2012 orders. But almost six

years later, in March 2018, Father filed several motions, including motions for relief

under Rule 60, challenging the 2012 orders.

 On 5 July 2018, the trial court entered an order dismissing Father’s motions,

including Father’s Rule 60 motions for relief from the 2012 orders. Father timely

appealed from this order.

 In his appellate brief, Father only argues against the denial of his Rule 60

motions. Accordingly, our review is limited to the trial court’s denial of Father’s Rule

60 motions.1

 II. Analysis

 A. Father’s Rule 60(b)(4) Claim

 Father moved for relief pursuant to Rule 60(b)(4) of our Rules of Civil

Procedure, which allows relief from a judgment where “[t]he judgment is void.” N.C.

Gen. Stat. § 1A-1, Rule 60(b)(4) (2018). Specifically, Father argues that the 2012

orders are void because they allowed the trial court the authority to order his arrest

for an indefinite time going forward if Mother ever claimed he missed a payment,

without giving him the opportunity to be heard on the matter.

 Father’s argument centers on the provision in the 2012 Order finding him in

contempt for his accumulated arrearages, as follows:

 1 Mother did not file a brief with our Court.

 -3-
 UNGER V. UNGER

 Opinion of the Court

 That [Father] is hereby ordered into custody of the Sheriff
 of Cumberland County, North Carolina for a period of
 thirty (30) days which shall be suspended by [Father]
 abiding by the terms of this child support as herein set
 above or until such time as he purges himself of contempt.

For the following reasons, we conclude that the 2012 Order, though it might contain

legal errors which could have been the bases of a direct appeal if timely brought, is

not void.

 In criminal contempt statutes, the General Assembly has authorized trial

courts to impose sentences of up to 120 (one hundred and twenty) days for past

failures to pay child support, “provided the sentence is suspended upon conditions

reasonably related to the contemnor’s payment of child support.” N.C. Gen. Stat. §

5A-12(a)(3)(2012)2. Here, in its 2012 MOJ and 2012 Order, the trial court held Father

in contempt for his past violations of the original 2008 Order, as Father was not yet

in violation of the 2012 orders. That is, even though he was not current on his

obligations created by the 2008 Order, the 2012 MOJ and the 2012 Order allowed

Father to pay those arrearages on a new schedule, with the first payment due in the

future, at $100 per month. The trial court, though, under Chapter 5A-12 could (and

did) punish Father for accumulating those arrearages with a 30-day suspended

sentence.

 2 Under this Statute, though, a trial court need not suspend the sentence if the sentence is
thirty (30) days or less. Here, since the sentence imposed on Father was thirty (30) days, the trial
court did not have to suspend the sentence, but chose to do so in its discretion.

 -4-
 UNGER V. UNGER

 Opinion of the Court

 Father, though, takes issue with phrase in the 2012 Order that, if his 30-day

suspended sentence was activated, he could shorten the 30-day activated sentence by

“purg[ing] himself of contempt.” Father contends that this phrase renders the 2012

Order void in its entirety because the Order does not state how he would purge

himself of the contempt. Indeed, where a person is held in civil contempt, he may

stay imprisoned indefinitely until he meets the purge condition contained in the

order; and where a civil contempt order does not contain a clear purge condition, the

order must be vacated. See Bethea v. McDonald, 70 N.C. App. 566, 570, 320 S.E.2d

690, 693 (1984).

 We disagree that the purge condition renders the 2012 Order void, for two

reasons. First, we conclude that the trial court was holding Father in criminal

contempt for the arrearages he had accumulated up to 2012, ordering a 30-day

criminal sentence. Our Supreme Court has noted that “the demarcation between the

two [types of contempt] may be hazy at best.” O’Briant v. O’Briant, 313 N.C. 432,

434, 329 S.E.2d 370, 372 (1985). Our Supreme Court further instructed as follows,

in making the demarcation:

 A major factor in determining whether contempt is
 criminal or civil is the purpose for which the power is
 exercised. Where the punishment is to preserve the court’s
 authority and to punish disobedience of its orders, it is
 criminal contempt. Where the purpose is to provide a
 remedy for an injured suiter and to coerce compliance with
 an order, the contempt is civil.

 -5-
 UNGER V. UNGER

 Opinion of the Court

Id. (emphasis added) (internal citations omitted).

 Father argues that the “purge” language transforms the orders to civil since

the contempt provision could be construed to compel future obedience. But we have

held that a provision that allows for the possibility of early release does not

“transform probationary or suspended sentences into civil relief.” Bishop v. Bishop,

90 N.C. App. 499, 506, 369 S.E.2d 106, 110 (1988) (citing N.C. Gen. Stat. § 15A-

1343(b)(4) in which our General Assembly has included the compliance with child

support orders as a “regular condition[] of probation” in a criminal context).

 The purge condition in this case might have some effect to compel Father’s

future obedience, but that effect is limited since Father would have to be set free after

30 days anyway (unless he is separately found to be in civil contempt of the future

violation). Rather, we construe the trial court’s sentence as a 30-day criminal

sentence that was being suspended. The purge provision merely allowed Father to

shorten the 30-day sentence, if activated based on a future violation, if he cured the

future violation while serving his activated criminal sentence. The purge provision,

though, did not lengthen the 30-day sentence; that is, if the sentence was activated

based on a future violation and Father did not cure the violation, he could still only

be held for 30 days based on the 2012 Order. Of course, a future court, in activating

the 30-day sentence, could also separately find Father to be in civil contempt of the

 -6-
 UNGER V. UNGER

 Opinion of the Court

2012 Order for the future violation and order Father to be held indefinitely until he

purged himself of that contempt.

 Second, even if the purge provision transformed the 2012 Order to a civil

contempt order, we conclude that the purge condition is not ambiguous. The trial

court in 2012 was as clear as it could possibly be in stating that if the 30-day sentence

was ever activated based on a future violation, it is then that the trial court, in its

order activating the sentence, is to state with specificity how Father is in violation

and what he must do to purge himself of that future violation.

 Father does not make any specific argument concerning the 2012 Arrest Order.

We point out, though, that this Arrest Order, based on Father’s alleged violation of

the 2012 Order, is problematic, for at least two reasons.

 First, the 2012 Arrest Order indicates that Father was to be imprisoned until

he paid his $700.00 in arrearages, without any indication that he could only be held

for a maximum of 30 days. The trial court had no authority under the 2012 Order to

order Father to be held for more than 30 days based on the 2012 Order. If the trial

court wanted to impose an indefinite sentence of imprisonment to compel Father’s

obedience to the 2012 Order, it could only do so based on a new contempt finding

based on a new show cause hearing.

 And, second, there is nothing in the record which indicates that Father was

ever given the opportunity to be heard before the 2012 Arrest Order was entered,

 -7-
 UNGER V. UNGER

 Opinion of the Court

which activated his 30-day sentence. Indeed, while the trial court is authorized to

suspend a sentence based on a finding of contempt, it is a violation of due process to

allow the sentence to be activated based on the alleged violation of a probationary

condition without the opportunity first to be heard on the matter. See State v. Hunter,

315 N.C. 371, 377, 338 S.E.2d 99, 104 (1986) (noting that due process requires a

hearing before a suspended sentence can be activated in the probation context).

 Nevertheless, in this appeal, Father makes no argument that the 2012 Arrest

Order was itself void, but rather only that the 2012 MOJ and 2012 Order were void.

And since the trial court had jurisdiction over the parties and the subject matter and

had the authority to sentence Father to a suspended 30-day sentence based on the

arrearages he had accumulated up to 2012, we conclude that the orders are not void.

Therefore, the trial court did not err in denying Father’s motion to set aside those

orders based on Rule 60(b)(4).

 B. Father’s 60(b)(3) Claim

 Father also argues that the trial court erred in failing to grant him relief from

the 2012 orders based on Rule 60(b)(3), which allows relief where there has been

“[f]raud.” N.C. Gen. Stat. § 1A-1, Rule 60(b)(3) (2018). However, Rule 60(b) provides

for a one-year statute of limitations for relief from fraud claims, which runs from the

date of the order. Caswell Realty Assocs. v. Andrews Co., 121 N.C. App. 483, 485, 466

 -8-
 UNGER V. UNGER

 Opinion of the Court

S.E.2d 310, 312 (1996). Therefore, Father’s claim under Rule 60(b)(3) is time-barred.

Id.

 III. Conclusion

 The trial court did not err in denying Father’s motions. Therefore, we affirm

the order of the trial court.

 AFFIRMED.

 Judge ZACHARY concurs in result only.

 Judge BERGER concurs in part and dissents in part by separate opinion.

 -9-
 No. 18-1234 – Unger v. Unger

 BERGER, Judge, concurring in part, dissenting in part.

 I concur with the majority opinion that Rule 60(b) provides for a one-year

statute of limitations for relief from fraud claims, and because no exceptions are set

forth in the rule, Guy Unger’s (“Appellant”) claim under Rule 60(b)(3) is time-barred.

However, I respectfully dissent from the remainder of the majority’s opinion.

 “Appellate review of a trial court’s ruling pursuant to Rule 60(b) is limited to

determining whether the trial court abused its discretion.” Parris v. Light, 146 N.C.

App. 515, 518, 553 S.E.2d 96, 97 (2001) (citations and quotation marks omitted).

“Rendition of findings of fact is not required of the trial court in ruling upon a

Rule 60(b) motion absent the request of a party, although it is the better practice to

do so.” Id. at 518, 553 S.E.2d at 98 (citation and quotation marks omitted). Moreover,

“Rule 60(b) provides no specific relief for errors of law and our courts have long held

that even the broad general language of Rule 60(b)(6) does not include relief for errors

of law.” Hagwood v. Odom, 88 N.C. App. 513, 519, 364 S.E.2d 190, 193 (1988) (citation

and quotation marks omitted). “The appropriate remedy for errors of law committed

by the court is either appeal or a timely motion for relief under N.C.G.S. Sec. 1A-

1, Rule 59(a)(8) . . . .” Id. at 519, 364 S.E.2d at 193. “[A]n appeal from an order

denying relief under 60(b) does not bring up for review the judgment from which relief

is sought.” In re Brown, 23 N.C. App. 109, 110, 208 S.E.2d 282, 283 (1974) (citation

and quotation marks omitted).
 UNGER V. UNGER

 BERGER, J., concurring in part, dissenting in part

 Appellant seeks relief under Rule 60(b)(4) of the North Carolina Rules of Civil

Procedure. He argues that the September 26 Order is void because the trial court

lacked both subject matter and personal jurisdiction, and because the trial court

exceeded its authority in issuing its contempt order. Although the trial court had

subject matter and personal jurisdiction to enter the September 26 order, the

majority has declined to address these two arguments except in a conclusory fashion.

However, the contempt order is void because the trial court exceeded its authority.

 N.C. Gen. Stat. § 1A-1, Rule 60(b) of the Rules of
 Civil Procedure provides that upon proper motion, a court
 may relieve a party or his legal representative from a final
 judgment, order, or proceeding. . . . A Rule 60(b)(4) motion
 is only proper where a judgment is “void” as that term is
 defined by the law. A judgment will not be deemed void
 merely for an error in law, fact, or procedure. A judgment
 is void only when the issuing court has no jurisdiction over
 the parties or subject matter in question or has no
 authority to render the judgment entered. A judgment, if
 proper on its face, is not void.

 The correct procedure for attacking a judgment is
 dependent upon the type of defect asserted. If a judgment
 is void, it is a nullity and may be attacked at any time. Rule
 60(b)(4) is an appropriate method of challenging such a
 judgment.

Burton v. Blanton, 107 N.C. App. 615, 616-17, 421 S.E.2d 381, 382-83 (1992)

(emphasis added) (citations and quotation marks omitted). The burden of proof is on

the moving party to demonstrate that the judgment was void for want of jurisdiction

or authority. Howell v. Tunstall, 64. N.C. App. 703, 705, 308 S.E.2d 454, 456 (1983).

 2
 UNGER V. UNGER

 BERGER, J., concurring in part, dissenting in part

 Ordinarily, where the court has jurisdiction of the
 parties and of the subject matter and enters a judgment
 which is not supported by findings of fact, the judgment is,
 at most, erroneous but not void and may be attacked only
 by an appeal. Where the court acts in excess of its
 authority, however, the result is different.

 If the court was without authority, its judgment . . .
 is void and of no effect. A lack of jurisdiction or power in
 the court entering a judgment always avoids the judgment,
 and a void judgment may be attacked whenever and
 wherever it is asserted, without any special plea.

Allred v. Tucci, 85 N.C. App. 138, 143, 354 S.E.2d. 291, 295 (1987) (emphasis added)

(purgandum). “Where jurisdiction is statutory and the Legislature requires the Court

to exercise its jurisdiction in a certain manner, to follow a certain procedure, or

otherwise subjects the Court to certain limitations, an act of the Court beyond these

limits is in excess of its jurisdiction.” Eudy v. Eudy, 288 N.C. 71, 75, 215 S.E.2d 782,

785 (1975), overruled on other grounds by Quick v. Quick, 305 N.C. 446, 290 S.E.2d

653 (1982).

 Section 5A-21 of the North Carolina General Statutes authorizes courts of this

State to enforce its orders through civil contempt proceedings. “Included within that

grant of authority are the provisions of [Section 5A-22], which require that,” Tucci,

85 N.C. App. at 142, 354 S.E.2d at 294, “[t]he order of the court holding a person in

civil contempt must specify how the person may purge himself of the contempt.” N.C.

Gen. Stat. § 5A-22(a) (2017).

 3
 UNGER V. UNGER

 BERGER, J., concurring in part, dissenting in part

 “Civil contempt . . . is employed to coerce disobedient defendants into

complying with orders of court, and the length of time that a defendant can be

imprisoned in a proper case is not limited by law, since the defendant can obtain his

release immediately upon complying with the court’s order.” Brower v. Brower, 70

N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984). “The purpose of civil contempt is not

to punish[,]” but to coerce the defendant to comply with the order. Jolly v. Wright,

300 N.C. 83, 92, 265 S.E.2d 135, 142 (1980).

 This court has established the bright line rule that civil contempt implicates

“remedial” relief and criminal contempt implicates “punitive” relief. “If the relief

provided is a sentence of imprisonment, it is remedial if the defendant stands

committed unless and until he performs the affirmative act required by the court’s

order, and is punitive if the sentence is limited to imprisonment for a definite period.”

Bishop v. Bishop, 90 N.C. App. 499, 504, 369 S.E.2d 106, 108-09 (1988) (citation and

quotations omitted). In setting conditions for a party to purge his civil contempt,

there are two requirements for a trial court. Spears v. Spears, 245 N.C. App. 260,

281, 784 S.E.2d 485, 499 (2016). “First, the trial court must make findings of fact as

to defendant’s present ability to comply with the purge conditions.” Id. at 281, 784

S.E.2d at 499. “Second, the trial court must clearly specify what defendant must do

to purge himself of contempt and exactly when he must do it.” Id. at 282, 784 S.E.2d

at 499. When a contempt order fails to specify, as required by Section 5A-22(a) of the

 4
 UNGER V. UNGER

 BERGER, J., concurring in part, dissenting in part

North Carolina General Statutes, how a party might purge himself of contempt, the

order must be vacated. Bethea v. McDonald, 70 N.C. App. 566, 570, 320 S.E.2d 690,

693 (1984).

 Here, in the September 26 Order, the trial court ordered Appellant to be taken

into custody for 30 days, a sentence that the trial court suspended provided that

Appellant was “abiding by the terms of this child support [order] or until such time

as he purges himself of contempt.” Because Appellant was to be imprisoned unless

and until he performed the affirmative act of purging his contempt, the relief imposed

by the trial court was remedial. Therefore, the contempt order was civil in nature.

 Because the order was civil, the trial court was required to clearly specify how

Appellant could purge himself of contempt. However, the above-quoted provision is

as detailed as the trial court gets with respect to the contempt order. The trial court

states that Appellant may purge himself of contempt but stops there. Without a

clearer statement, it is hard to envision how the Appellant would possibly know how

to purge himself of contempt. Under Section 5A-22, the trial court was without

authority to issue an order holding Appellant in civil contempt without also stating

the means by which such contempt could be purged.

 Because the trial court did not specify how Appellant might purge himself of

contempt as required by Section 5A-22, the trial court acted beyond its authority with

regard to the contempt order included in the September 26 Order. The contempt

 5
 UNGER V. UNGER

 BERGER, J., concurring in part, dissenting in part

order entered on September 26, 2012 is void.3 Thus, the trial court erred in denying

Appellant’s motion for relief pursuant to Rule 60(b)(4).

 3 While the North Carolina Supreme Court has previously held that “[a] valid consent
judgment may be set aside only with the consent of both parties, or upon proof that consent was not
given or was obtained by fraud or mutual mistake” Tucci, 85 N.C. App. at 143-44, 354 S.E.2d at 295
(citing Holden v. Holden, 245 N.C. 1, 95 S.E.2d 118 (1956)), “[a] void judgment [ ] binds no one and it
is immaterial whether the judgment was or was not entered by consent.” Id. at 144, 354 S.E.2d at 295
(citation omitted).

 6